**No. 13-15684**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARK MORTIMER;

*Plaintiff -Appellant,*

— v. —

BANK OF AMERICA, NATIONAL ASSOCIATION,

*Defendant-Appellee.*

Appeal from Judgment on F.R.C.P. 12(b)(6)
United States District Court
Northern District of California
Case No. 3:12-cv-01959-JCS
The Honorable Joseph C. Spero

# APPELLANT'S REPLY BRIEF

SCOTT J. SAGARIA (SBN 217981)
SJSagaria@sagarialaw.com
ELLIOT W. GALE (SBN 263326)
Egale@sagarialaw.com
333 W. SAN CARLOS ST. SUITE 620
SAN JOSE, CA 95110
Tel. 408-279-2288 Fax: 408-279-2299
ATTORNEYS FOR APPELLANT

# TABLE OF CONTENTS

**Pages(s)**

I.  INTRODUCTION ……………………………………………………..1

II. LEGAL ARGUMENT ………………………………………………3

    a.  Mr. Mortimer Sufficiently Alleged a Claim Against BANA
       under Section 1681s-2(b) of the Federal Fair Credit Reporting Act ……...3

        i.  Mr. Mortimer has Identified a Factual Inaccuracy
           on his Experian Credit Reports ………………………………….3

        ii.  BANA's Reporting on the Account to Experian
           Was Technically Inaccurate Because It Reported Overdue
           Payments While Simultaneously Reporting A Zero Balance …………4

       iii.  The Overdue Payments are "Materially Misleading" …………………7

             1.  The Overdue Payments Convey that Mr. Mortimer was
                Financially Irresponsible for Failing to Make Payments
                that Were Not Past Due as a Result of his Chapter 7
                Bankruptcy Petition …………………………………………....7

             2.  BANA Failed to Report the Nature of Mr. Mortimer's
                Dispute to Experian ……………………………………………...10

    b.  Mr. Mortimer Could Enforce his FCRA Claim Against
       BANA Even if the "Inaccurate" Information was Solely
       Premised Upon a Legal Theory ………………………………………..13

    c.  Mr. Mortimer Sufficiently Alleged a Claim Against
       BANA under Section 1785.25(a) of the California
       Consumer Credit Reporting Agencies Act ………………………….18

III. CONCLUSION ………………………………………………...19

IV.  CERTIFICATION………………………………………………..20

- i -

# TABLE OF AUTHORITIES

**Pages(s)**

## Cases

*Barrepski v. Capital One Bank*,
439 Fed. Appx. 11 (1st Cir. Sept. 23, 2011)……………………………………...17

*Boggio v. USAA Fed. Sav. Bank*,
696 F.3d 611 (6th Cir. 2012) …………………………………………………..3, 17

*Boeing v. Ybarra* (*In re Ybarra*),
424 F.3d 1018 (9th Cir. 2005) ……………………………………………………16

*Carvalho v. Equifax Info. Servs. LLC*,
629 F.3d 876 (9th Cir. 2010) …………………………………………..5, 6, 14, 16, 17

*Chiang v. Verizon New England Inc.*,
 595 F.3d 26 (1st Cir. 2010) ……………………………………………15, 16, 17

*Cisneros v. U.D. Registry, Inc.*,
 (1995) 39 Cal. App. 4th 548 …………………………………………………..18

*Dahlia v. Rodriguez*,
No. 10-55978, 2013 U.S. App. LEXIS 17489 (9th Cir. Aug. 21, 2013) ………6, 18

*Deandrade v. Transunion LLC*
523 F.3d 61, 68 (1st Cir. 2008)…………………………………………...14, 16, 17

*Drew v. Equifax Info. Servs., LLC.*,
690 F.3d 1100 (9th Cir. 2012) …………………………………………………..3, 4

*Gorman v. Wolpoff & Abramson, LLP.*,
584 F.3d 1147 (9th Cir. 2009) …………………….……………….4, 7, 10, 11, 12

*Grantham v. Bank of America, N.A.*,
No. 12-1960, 2012 U.S. Dist. LEXIS 167439 (N.D. Cal. Nov. 26, 2012) ……..…4

*In re State Airlines, Inc.* 873 F.2d 264, 268 (11th Cir. 1989)……………………..8

*Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991)……………………………..9

*Narog v. Certegy Check Servs., Inc.*,
759 F. Supp. 2d 1189  (N.D. Cal. 2011) ……………………………………...…4

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ……………………………………………………......…3

*Shaq v. Capital One Fin. Corp*.
No. 11-4461, 2012 U.S. Dist. LEXIS 45939 ………………………..…..12, 13

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ………………………………………………...…6

*Sprietsma v. Mercury Marine*,
537 U.S. 51 (2003) ……………………………………………………………11

*Saunders v. Branch Bank & Trust*,
526 F.3d 142 (4th Cir. 2008) …………………………………....5, 7, 12, 17

*United States v. Union Auto Sales, Inc*.,
490 Fed. Appx. 847 (9th Cir. July 13, 2012) ……………………………..13

*Zavelo v. Reeves*, 227 U.S. 625 (2009)……………………………………….9, 10

**Statutes**

15 U.S.C. 1681s-2(a)……………………………………………...11

15 U.S.C. 1681s-2(b)………………………………………......3, 10, 11

11 U.S.C. § 301……………………………………………………13, 16

11 U.S.C. § 362 …………………………………………………...8, 9, 15

11 U.S.C. § 727(b) ……………………………………………..9, 13

16 C.F.R. § 660.3 …………………………………………………..8

16 C.F.R. Pt. § 660 App. A ……………………………………………...8

Cal. Civ. Code § 1785.25(a) …………………………………………………...18

**Other Authority**

Fed. R. Civ. Pro. 12(b)(6)…………………………………………………..10, 13

# I.  **INTRODUCTION**

Bank of America, National Association's ("BANA's") response raises a new legal theory that suggests Mr. Mortimer's federal Fair Credit Reporting Act ("FCRA") and California Consumer Credit Reporting Agencies Act ("CCCRAA") claims must fail because they are based on a legal question.  BANA's argument ignores the factual inaccuracies Appellant Mark Mortimer ("Mr. Mortimer") identified in his First Amended Complaint ("FAC"), distracts this Court with an irrelevant concern, and ultimately overlooks the current stage of this proceeding. In his FAC, Mr. Mortimer alleged the overdue payments BANA reported to the credit reporting agencies ("CRAs") in December 2009 and January 2010 were factually inaccurate for two reasons.  First, BANA notified Experian that Mr. Mortimer did not have a balance to pay at the time it reported the overdue payments.  Second, BANA reported the overdue payments to Experian without also reporting the specific nature of Mr. Mortimer's dispute.  Taken as a whole, these factual inaccuracies alone prove that Mr. Mortimer should have survived BANA's Rule 12(b)(6) motion to dismiss.

Moreover, BANA would still be liable under the FCRA and CCCRAA even if Mr. Mortimer's entire case concerned the impact of the federal bankruptcy laws on his obligation to pay BANA.  In its opposition, BANA presents a trilogy of cases for the proposition that a consumer may not bring an FCRA or CCCRAA

1

claim against a furnisher that rests solely on a disputed legal question. BANA's argument, however, conflates the reasoning of those cases into a general proposition that furnishers are not responsible for reporting to CRAs in a manner consistent with federal statutes because to do so involves statutory interpretation. Those cases do not stand for that proposition but instead merely recognize that furnishers cannot be responsible for resolving a legal dispute which requires a final court order. Taken to its logical conclusion, BANA's argument would undermine the entire FCRA and the Federal or states government's ability to regulate the accuracy of credit reporting.

Finally, at this early stage of the proceeding, the inquiry is whether the allegations in the FAC plausibly suggest BANA violated the FCRA and CCCRAA. Mr. Mortimer's allegations against BANA do plausibly suggest that BANA reported inaccurate information and hence violated both statutes. BANA's counter arguments, at best, lead to an equally plausible conclusion that the overdue payments it reported to Experian were accurate. These competing plausible interpretations are exactly why the district court should have denied BANA's motion to dismiss and allowed Mr. Mortimer time to further substantiate his claims. For these reasons, Mr. Mortimer respectfully requests this Court enter an order reversing the district court's judgment of dismissal.

## II. <u>LEGAL ARGUMENT</u>

### a. <u>Mr. Mortimer Sufficiently Alleged a Claim Against BANA under Section 1681s-2(b) of the Federal Fair Credit Reporting Act</u>

The FCRA creates a private right of action against a furnisher that violates any one of the five separate statutory duties listed in Section 1681s-2(b). *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 618 (6th Cir. 2012). Here, Mr. Mortimer's FCRA claim arises under subparagraphs (D)-(E) of Section 1681s-2(b). Under those sections, if a furnisher discovers "inaccurate or incomplete" information during its investigation, it must report the results to all the CRAs and permanently prevent any future misreporting. *Drew v. Equifax Info. Servs., LLC.*, 690 F.3d 1100, 1107-1108 (9th Cir. 2012). In the FAC, Mr. Mortimer alleged BANA reported *factually* inaccurate overdue payments within the meaning of Section 1681s-2(b) to the CRAs and violated those two particular subparagraphs. Therefore, Mr. Mortimer adequately stated a claim against BANA under Section 1681s-2(b) of the FCRA.

> #### i. Mr. Mortimer has Identified a Factual Inaccuracy on his Experian Credit Reports

The FCRA proscribes the reporting of information that is either inaccurate or incomplete. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). This Court has held that information may be "inaccurate or incomplete" in one of two ways. First, an item on a credit report can be incomplete or inaccurate if it is patently

3

incorrect on its face. *Drew*, 690 F.3d at 1108. Second, an item on a credit report can also be inaccurate or incomplete if it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. *Gorman v. Wolpoff & Abramson, LLP*., 584 F.3d 1147, 1154 (9th Cir. 2009).

> ii. BANA's Reporting on the Account to Experian Was Technically Inaccurate Because It Reported Overdue Payments While Simultaneously Reporting A Zero Balance

Information is "patently incorrect" if the error appears on the face of the credit report. *Drew*, 690 F.3d at 1108. Here, the Experian credit reports Mr. Mortimer received after BANA concluded its investigation of his dispute with the Experian prove that BANA reported patently false information. In particular, BANA notified Transunion and Equifax that the overdue payments it reported in December 2009 and January 2010 were inaccurate. Rather than send this same notification to Experian, BANA instead continued reporting the overdue payments while simultaneously reporting that there was no amount past due during both months.[1] Mr. Mortimer could not possibly have been responsible for submitting payments to BANA in months where it reported there was no balance left to pay on the account. *Grantham v. Bank of America, N.A*., No. 12-1960, 2012 U.S. Dist. LEXIS 167439, at *9 (N.D. Cal. Nov. 26, 2012); *see also Narog v. Certegy Check Servs., Inc.*, 759 F. Supp. 2d 1189, 1193 (N.D. Cal. 2011).

---

[1] Excerpts of Record (hereinafter "EOR") at 54.

4

Despite this glaring inconsistency, BANA claims the overdue payments are technically accurate because it simply reported the fact of non-payment on a debt that was past due.[2]   BANA's assertion here is wrong for three reasons.  First, BANA's argument presupposes there was in fact a past due balance on the account to pay when it reported the overdue payments.  According to the Experian credit report, however, Mr. Mortimer owed no balance as of November 2009, the month before BANA reported the first overdue payment in December 2009.[3]   BANA cannot seriously argue that it was entitled to penalize Mr. Mortimer for failing to pay a debt that was not in fact past due.

Second, BANA also cannot rely on *Saunders v. Branch Bank & Trust* or *Carvalho v. Equifax Info. Servs. LLC* to support its assertion.  In *Saunders*, the Fourth Circuit noted that a report of non-payment on a debt that was past due in the amount of $600.00 contained technically inaccurate information.  526 F.3d 142, 150 (4th Cir. 2008).  Similarly in *Carvahlo*, the plaintiff did not contest that a $118.00 medical bill the furnisher reported to Equifax was technically accurate. 629 F.3d 876, 890-892 (9th Cir. 2010).  Unlike *Saunders* and *Carvahlo*, the Experian credit report indicates Mr. Mortimer did not have a balance left to pay on the account when BANA reported the overdue payments.  Thus, *Saunders* and

---

[2] Appellant's Responding Brief (hereinafter "ARB") at 19.
[3] EOR at 49.

5

*Carvalho* do not stand for the proposition that reporting overdue payments is technically accurate when there is no outstanding balance on the account.

Third, BANA filed a Rule 12(b)(6) motion to dismiss. At this stage of the proceeding, Mr. Mortimer merely needs to prove that the factual inaccuracy he identified is plausible. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In the very least, it is plausible that overdue payments reported on a debt that is not past due are factually inaccurate. While BANA's internal records may reveal that it actually reported an overdue balance to Experian in December 2009 and January 2010, they cannot be used to contradict the patently false information.[4] *Dahlia v. Rodriguez*, No. 10-55978, 2013 U.S. App. LEXIS 17489, at *45 (9th Cir. Aug. 21, 2013) (explaining that a district court should not resolve any factual dispute on a Rule 12(b)(6) motion to dismiss). As a result, Mr. Mortimer has sufficiently alleged that BANA reported patently false information.

---

[4] The district court's decision also suffers from the same flaw. According to the district court, the zero balance does not render the overdue payment inaccurate because Mr. Mortimer had a past due balance of $784.00 which existed during his bankruptcy proceeding. EOR at 20. That may be true. Nevertheless, the Experian credit report indicates BANA deleted the balance and yet penalized Mr. Mortimer for failing to submit a payment of $0.00. If BANA's records indicate that it never deleted the balance, then it must present that evidence on a summary judgment motion or eventually at a trial.

iii.  The Overdue Payments are "Materially Misleading"

The FCRA also proscribes the reporting of information that is "materially misleading." *Gorman*, 584 F.3d at 1163.  Information is materially misleading if it is presented in such a way that it can be expected to adversely affect credit decisions. *Id*.

1. The Overdue Payments Convey that Mr. Mortimer was Financially Irresponsible for Failing to Make Payments that Were Not Past Due as a Result of his Chapter 7 Bankruptcy Petition

The overdue payments are also "materially misleading" because prospective lenders will assume Mr. Mortimer was financially irresponsible for failing to pay a debt that was not past due.  *Saunders*, 526 F.3d at 150.  According to BANA, however, prospective lenders cannot possibly make this assumption because they will know the overdue payments were missed during the bankruptcy proceeding.[5] Stated slightly different, BANA's view is that after it reported the bankruptcy proceeding to the CRAs, prospective lenders will forever ignore Mr. Mortimer's entire payment history.  BANA is simply wrong.

BANA, as a furnisher of credit information, reports a consumer's payment history so that other furnishers can predict the consumer's ability to repay any

---

[5] ARB at 20.

future debt.[6]  *See* 16 C.F.R. § 660.3; 16 C.F.R. Pt. § 660 App. A.  This payment history did not become irrelevant after Mr. Mortimer filed for bankruptcy.  On the contrary, each month is absolutely critical for potential lenders assessing the probability Mr. Mortimer will repay his future debts.  The overdue payments BANA reported in this case are relevant and materially misleading because BANA simultaneously informed Experian that Mr. Mortimer did not have a past due balance.  As a result, Experian ultimately decreased Mr. Mortimer's overall credit score and other potential lenders denied him credit simply for failing to pay a debt that was not past due.

In addition, the overdue payments are also "materially misleading" because Mr. Mortimer was not required to pay BANA after he filed for bankruptcy.  When Mr. Mortimer filed his Chapter 7 bankruptcy petition, an order for relief arose which initiated the automatic stay under Section 362 of the Bankruptcy Code.  *In re State Airlines, Inc*. 873 F.2d 264, 268 (11th Cir. 1989).  The automatic stay, among other things, prohibited BANA from attempting to collect on the debt from Mr. Mortimer.  11 U.S.C. § 362(a)(6) (2009).  Although barred from enforcing its debt against Mr. Mortimer, BANA claims that he was still required to pay it because Section 362 does not explicitly relieve him of this obligation.  To support

---

[6] Consumer Financial Protection Bureau, *Key Dimensions and Processes in the U.S. Credit Reporting System: A Review of how the Nation's Largest Credit Bureaus Manage Consumer Data*, December 2012, at 15, *available at* http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.

8

this assertion, BANA claims that Mr. Mortimer's obligation to pay only ceased upon entry of the discharge pursuant to Section 727(b). BANA's argument, however, misconstrues the mechanism by which the discharge order released Mr. Mortimer from his obligation to pay his debt. The discharge order under Section 727(b) released Mr. Mortimer from his debt because its enforcement mechanism, Section 524, permanently enjoined BANA from enforcing its claim. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991). BANA, however, was already enjoined from enforcing its claim against Mr. Mortimer during his bankruptcy proceeding as a result of the automatic stay. 11 U.S.C. § 362(a)(6) (2009). Thus, the release that occurred under Section 727(b) stems from a permanent prohibition that already existed through the automatic stay.

Even if not, Mr. Mortimer's obligation to pay BANA still ceased after November 3, 2009 because his discharge order related back to this date. In a Chapter 7 bankruptcy petition, the discharge "discharges the debtor from all debts that arose before the date of the order of relief." 11 U.S.C. § 727(b) (2009). BANA claims that the discharge order, when entered, does not relate back to the filing date but instead applies prospectively from the date of entry.[7] The discharge relation back doctrine has existed since the Supreme Court's decision over 100 years ago in *Zavelo v. Reeves*. In *Zavelo*, the Court held that debtor could bind

---

[7] ARB at 25.

9

himself to pay a creditor on a debt that was subject to a discharge in bankruptcy. 227 U.S. 625, 627 (2009). The Supreme Court explained that a debtor could bind himself to a pre-petition debt because the discharge releases the debtor from his liability from the filing date. *Id.* BANA's own handling of Mr. Mortimer's debt proves that it, too, understood his discharge order applied retroactively to the filing date. Under BANA's theory, it could collect on any interest or late penalties that accrued on the account during Mr. Mortimer's bankruptcy proceeding. Here, BANA's actions and reporting of a zero balance confirm that it could not. Therefore, Mr. Mortimer alleged sufficient facts to demonstrate that the overdue payments materially mislead Experian and other potential lenders. As a result, the district court should have denied BANA's Rule 12(b)(6) motion to dismiss.

### 2. BANA Failed to Report the Nature of Mr. Mortimer's Dispute to Experian

Even assuming the overdue payments were technically accurate and not materially misleading, BANA is still liable under Section 1681s-2(b) because it re-reported them without also reporting Mr. Mortimer's dispute to Experian. This Court's decision in *Gorman* is particularly instructive here and bears re-emphasizing.

In *Gorman*, this Court held that a credit entry may be "incomplete or inaccurate" within the meaning of the FCRA if the furnisher fails to report the

consumer's dispute to the CRA. 584 F.3d at 1163. This Court, however, cautioned that furnisher liability under Section 1681s-2(b) extends to bona fide disputes, or in other words it must materially alter how the debt is understood. *Id*. Although BANA concedes it failed to report Mr. Mortimer's dispute to Experian, BANA now claims it was unnecessary because prospective lenders will understand the overdue payments occurred during the bankruptcy proceeding.[8] BANA's novel and startling assertion fails for several reasons.

To begin with, BANA's assertion is inconsistent with the plain language of Section 1681s-2. A furnisher's duty to notify a CRA about a consumer dispute stems from Section 1681s-2(a)(3). *Gorman*, 584 F.3d 1162. That section states, "if the completeness or accuracy of any information furnished by any person to any [CRA] is disputed . . . by a consumer, the person may not furnish the information to any [CRA] without **notice that such information is disputed by the consumer**." 15 U.S.C. § 1681s-2(a)(3) (2009) (emphasis added). The statute uses the particular word "dispute" and does not carve out an exception for words or other text that convey the same meaning. BANA's interpretation, thus, essentially renders the word "dispute" superfluous and hence violates the Supreme Court's command to give meaning to every word in a statue. *Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2003). In addition, BANA's interpretation also ignores

---

[8] ARB at 22.

the importance of the "dispute" notation to Mr. Mortimer and other similarly situated consumers. As the Fourth Circuit noted in *Saunders*, when CRAs receive a dispute notice, some will exclude the derogatory information in their assessment of the consumer's overall credit score. 526 F.3d at 150.

Moreover, BANA's assertion also ignores one striking similarity to *Gorman*. In G*orman*, this Court noted that Mr. Gorman presented sufficient evidence for which a jury could conclude that his dispute was bona fide.[9] *Id*. at 1165. To support his Section 1681s-2(b) claim, Mr. Gorman submitted a declaration stating that he did not see a dispute notation on his credit reports. *Id*. at 1164. Mr. Gorman also relied on MBNA's response to the CRAs, which also did not contain a dispute notice. *Id*. at 1165. Based on that evidence, this Court held Mr. Gorman's Section 1681s-2(b) claim should have survived MBNA's summary judgment motion. *Id*. Like *Gorman*, Mr. Mortimer presented that exact same evidence to the district court.

Furthermore, the bankruptcy notation cannot serve as a sufficient replacement for the dispute notice because prospective lenders will be misled about the specific nature of Mr. Mortimer's dispute. Here, Mr. Mortimer is disputing the

---

[9] Since *Gorman*, other district courts from other circuits have attempted to define what constitutes a bona fide dispute under Section 1681s-2(b). *See*, *e.g.*, *Shaq v. Capital One Fin. Corp*., No. 11-4461, 2012 U.S. Dist. LEXIS 45939, at * 12 (E.D. Pa. Mar. 30, 2012). These Courts have held that a dispute is bona fide if the consumer provides sufficient information to further aid in the furnisher's investigation of the dispute. *Id*.

accuracy of the overdue payments for two reasons. First, Mr. Mortimer believes the overdue payments were inaccurate because there was no balance left to pay on the account in those months.[10] Second Mr. Mortimer believes the overdue payments were inaccurate because Sections 301(b) and 727(b) of the Bankruptcy Code relieved him of his obligation to pay BANA from November 2009.[11] The bankruptcy notation does not convey either of these two specific characteristics of Mr. Mortimer's dispute. Thus, as in *Gorman*, Mr. Mortimer's Section 1681s-2(b) claim based on BANA's failure to report his dispute to Experian is plausible. *Shaq v. Capital One Fin. Corp.*, No. 11-4461, 2012 U.S. Dist. LEXIS 45939, at *12. This Court must, therefore, reverse the district court's order granting BANA's Rule 12(b)(6) motion to dismiss.

> b. Mr. Mortimer Could Enforce his FCRA Claim Against BANA Even if the "Inaccurate" Information was Solely Premised Upon a Legal Theory

In its opposition, BANA tacitly concedes that it received notice of Mr. Mortimer's dispute from the CRAs, determined the overdue payments were inaccurate, and notified Transunion and Equifax of its reporting error. These detailed allegations provided BANA fair notice of the facts supporting Mr. Mortimer's FCRA claim and hence were sufficient to defeat its Rule 12(b)(6) motion to dismiss. *United States v. Union Auto Sales, Inc*., 490 Fed. Appx. 847,

---

[10] EOR at 54.
[11] EOR at 54.

848 (9th Cir. July 13, 2012) (reversing a district court's dismissal under Rule 12(b)(6) because the complaint contained sufficient facts to give Defendant notice of the claims against it). BANA, however, now for the first time claims that the dismissal was proper because the accuracy of the overdue payments involved a disputed legal question.[12] BANA's deeply flawed interpretation of the FCRA and significant misreading of the allegations in the FAC must fail for four reasons.

First, *Carvalho* and *Deandrade v. Transunion LLC* do not stand for the proposition that a furnisher can avoid liability under Section 1681s-2(b) simply because the allegedly inaccurate information involves a disputed legal question. On the contrary, both cases actually direct Mr. Mortimer and other similarly situated consumers to bring their defenses to the legal validity of a debt in a lawsuit against the furnisher. For instance, in *Carvalho*, this Court held that a CRAs duty to reasonably investigate a dispute under Section 1785.16 of the CCCRAA does not include reviewing the consumer's legal defenses to repayment. 629 F.3d 876, 890-892 (9th Cir. 2010). According to this Court, consumers cannot use CRAs like Equifax to collaterally attack the legal validity of their debts because they lack any direct relationship with the consumer. *Id.* This Court, however, then observed that furnishers, unlike CRAs, do have a direct relationship with the consumer and "are in a far better position to thoroughly investigate the disputed debt." *Id.*

---

[12] ARB at pg. 18.

14

Similarly, in *DeAndrade*, the First Circuit explained that a consumer who disputes the validity of his or her legal obligation to repay a debt should file a lawsuit against the furnisher. 523 F.3d 61, 68 (1st Cir. 2008).

Second, BANA's reliance on *Chiang v. Verizon New England Inc.* is equally misplaced. In *Chiang*, the First Circuit addressed an FCRA claim against a furnisher for failing to reasonably investigate a consumer dispute under Section 1681s-2(b)(1)(A). 595 F.3d 26 (1st Cir. 2010). The *Chiang* court first noted that the plaintiff's FCRA claim failed because he did not present any evidence that Verizon's investigation was deficient after two years of pre-trial litigation. *Id.* at 40. In addition, the *Chiang* court also rejected the plaintiff's FCRA claim because in its view, Verizon was ill equipped to resolve the plaintiff's legal dispute over the underlying debt during its investigation.[13] *Id.* at 41.

The concerns the *Chiang* court noted are certainly relevant in a breach of contract situation where the furnisher faces the impossible task of predicting how a court will interpret the contract in dispute. Those same concerns are not present here because BANA appears to have a deep understanding of the federal Bankruptcy laws.[14] For instance, when Mr. Mortimer filed for bankruptcy, Section

---

[13] The legal dispute in *Chiang* arose when the plaintiff failed to pay his bill and claimed that Verizon delivered faulty telephone service. *Chiang*, 595 F.3d at 31.

[14] As a large financial institution, BANA presumably encounters Chapter 7 bankruptcy proceedings on a regular basis and should have some familiarity with the Bankruptcy Code.

15

301(b) of the Bankruptcy Code initiated an automatic stay, which prohibited BANA from performing any act to collect, assess, or recover on the account. 11 U.S.C. § 362(a)(6) (2009). BANA's non-legally trained personnel must have understood the scope of Section 362 or else they would have forced Mr. Mortimer to repay his balance and the interest that accrued during his bankruptcy proceeding. Similarly, Mr. Mortimer's Section 727(b) discharge permanently relieved him of his obligation to pay BANA. *Boeing v. Ybarra* (*In re Ybarra*), 424 F.3d 1018, 1022 (9th Cir. 2005). Mr. Mortimer's Experian credit reports prove that BANA's non-legally trained personnel understood Section 727(b) as well because someone reported the account as closed with a zero balance after November 2009.[15] If BANA's non-legally trained personnel could not comprehend Section 727(b), they presumably would have continued reporting overdue payments on the account with a past due balance.

Third, unlike *Carvalho*, *Chiang*, and *DeAndrade*, Mr. Mortimer's FCRA claim is not premised upon the reasonable investigation portion of Section 1681s-2(b) but instead concerns its duties after it determined the overdue payments were inaccurate. The concerns the *Carvalho*, *Chiang*, and *DeAndrade* courts noted, and BANA strenuously urges this Court to consider, are irrelevant here because it already concluded that the overdue payments were inaccurate. *Saunders v. Branch*

---

[15] EOR at 48, 54.

16

*Banking & Trust Co.,* 526 F.3d 142, 150 (4th Cir. 2008) ("Claims . . . against furnishers . . . [involving a legal dispute of an underlying debt] do not raise th[e] same concerns because [it] is the creditor . . . ."). Regardless of why the overdue payments were inaccurate, Section 1681s-2(b) required BANA to notify Experian of its reporting error.[16] *Boggio*, 696 F.3d at 618. The *Carvalho*, *Chiang*, *DeAndrade* and courts never confronted this particular allegation and cannot be used to support BANA's attempt to invalidate the results of its investigation here.[17]

Lastly, BANA did not need to interpret the federal Bankruptcy laws during its investigation because its own records revealed that Mr. Mortimer was not obligated to pay his account in December 2009 and January 2010.[18] Indeed,

---

[16] Policy considerations also favor Mr. Mortimer. Indeed, BANA's interpretation means that a furnisher could determine the disputed information was inaccurate, notify the CRAs of its results, and then later attack those results on the ground that they involve a disputed legal question. BANA's interpretation finds no support in the text of Section 1681s-2(b) and is also inconsistent with the FCRA's consumer oriented objective of "ensuring fair and accurate credit reporting." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).

[17] It should also be noted that since *Chiang* and *DeAndrade*, the First Circuit has recently reversed a district court's dismissal of a Section 1681s-2(b) claim against a furnisher that involved an alleged legal inaccuracy. *Barrepski v. Capital One Bank*, 439 Fed. Appx. 11, 13 (1st Cir. Sept. 23, 2011).

[18] EOR at 54. Mr. Mortimer alleged that BANA subscribes to the Consumer Data Industry Association's ("CDIA's") Credit Reporting Resource Guide. *Id*. This guide exists to instruct furnishers, like BANA, on how to report credit information in certain situations. For a bankruptcy proceeding, the CDIA instructs furnishers to the report "D" or no data in the payment history section throughout the pendency of the bankruptcy. Thus, the CDIA's Credit Reporting Resource Guide obviated BANA's concerns about correctly interpreting Section 362 and 727's impact on Mr. Mortimer's obligation.

17

BANA's records stated that Mr. Mortimer had a past due balance of zero from November 2009 through February 2010, the months he allegedly failed to make payments.[19]   These records presumably are the reason why BANA notified Transunion and Equifax that the overdue payments were factually inaccurate.  As a result, Mr. Mortimer was entitled to at least further explore the basis of BANA's determination and present that evidence to the district court.   *Dahlia*, No. 10-55978, 2013 U.S. App. LEXIS 17489, at *45.

    c.  <u>Mr. Mortimer Sufficiently Alleged a Claim Against BANA under Section 1785.25(a) of the California Consumer Credit Reporting Agencies Act</u>

The CCCRAA prohibits a furnisher from reporting information that it knows or should know is inaccurate.  (Cal. Civ. Code § 1785.25(a) (2009)).  The CCCRAA is California's counterpart to the FCRA and similarly proscribes the reporting of information that is technically inaccurate or materially misleading.  *Cisneros v. U.D. Registry, Inc.*, (1995) 39 Cal. App. 4th 548, 580.  Here, for the reasons stated above, the overdue payments BANA reported to Experian are technically inaccurate and materially misleading because Mr. Mortimer did not have an overdue balance to pay on the debt.  Therefore, this Court must also reverse the district court's judgment of dismissal on Mr. Mortimer's CCCRAA claim.

---

[19] EOR at 54.

18

III.<u>CONCLUSION</u>

Mr. Mortimer stated viable claims against BANA under the FCRA and CCCRAA because his entire case is premised upon the factual inaccuracies he identified in his Experian credit report. In particular, the Experian credit report indicates BANA reported overdue payments to Experian while simultaneously reporting that there was no balance left on the account. These overdue payments are patently incorrect and materially misleading because Mr. Mortimer was not obligated to pay BANA in the months it reported him late. As a result, Mr. Mortimer should have survived BANA's Rule 12(b)(6) motion to dismiss. Moreover, Mr. Mortimer should have prevailed in the district court even if his FCRA and CCCRAA claims were solely premised upon the legal effect of his bankruptcy discharge. Although BANA claims its non-legally trained personnel cannot interpret the federal Bankruptcy laws, its interactions with Mr. Mortimer and reporting to the CRAs indicates the exact opposite. For these reasons, this Court must reverse the district court's judgment of dismissal and remand this proceeding back to the district court.

Dated: November 1, 2013          **Sagaria Law, P.C.**

By: *<u>Scott J. Sagaria</u>*
Attorney for Appellant

19

IV.     <u>CERTIFICATION</u>

I, <u>SCOTT J. SAGARIA</u>, hereby certify that this brief complies with the type volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii).  This brief contains 4,524 words.